FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 07, 2025

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHRISTOPHER R.,[1]<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,[2]<br><br>Defendant. | No.  1:25-cv-0001-EFS<br><br>**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS** |

Plaintiff Christopher R. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 2 benefits, while the

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." See LCivR 5.2(c).

[2] Frank Bisignano was confirmed as the Commissioner of Social Security on May 6, 2025. Pursuant to Federal Rule of Civil Procedure 25(d) and 42 U.S.C. § 405(g), he is substituted as the Defendant.

DISPOSITIVE ORDER - 1

Commissioner asks the Court to affirm the ALJ's denial. As is explained below, because the ALJ 1) failed to consider the required consistency factor for an examining source's medical opinion, and 2) did not fully and fairly consider the longitudinal record when evaluating the claim, this matter is remanded for further proceedings.

## I.    Background

In April 2023, Plaintiff applied for benefits under Title 2, claiming disability based on back issues, hip issues, neck issues, bone spurs, diabetes, insomnia, chronic pain, neuropathy, bilateral knee pain, bilateral shoulder pain, anxiety, depression, and post-traumatic stress disorder (PTSD).[3]

Plaintiff completed high school in 1993 in New York.[4] After high school, Plaintiff served in the military until he was discharged in 2004 due to an injury.[5] At an unknown time, Plaintiff was awarded a 100% service-related disability rating by the Veteran's Administration (VA)

---

[3] AR 198, 237.

[4] AR 238.

[5] AR 231, 307.

due to a combination of physical and mental impairments.[6] Plaintiff had no earnings in 2005-2006 and then began working for the U.S. Department of Agriculture, Forestry Service, as a social services aid.[7] In February 2022, Plaintiff was let go from his job with the Forestry Service because he was unable to be medically approved for a CDL license needed to perform his job duties.[8]

Plaintiff's claim was denied at the initial and reconsideration levels.[9] Plaintiff requested an administrative hearing, and in October 2024, ALJ Jesse Shumway held a telephone hearing, at which Plaintiff and a vocational expert testified.[10] Plaintiff testified that he returned to work following back surgery but then was forced to stop work in February 2022.[11] Plaintiff testified that he has pain from the bottom of

---

[6] AR 231.

[7] AR 208-221, 238-239.

[8] AR 307.

[9] AR 110, 121.

[10] AR 47-81.

[11] AR 51-52.

DISPOSITIVE ORDER - 3

his skull into his shoulders and down into his hands causing pain and numbness and causing him to drop things.[12] He has a hard time getting insurance to approve services for treatment so he frequently needs to lie down to relieve the pressure on his neck.[13] Plaintiff said that if he has to stretch his arms out to do repetitive activities such as typing or writing he can only do that for 5 to 10 minutes before his hands go numb and then it is 30 minutes before the feeling comes back in them.[14] He said that even making a quick meal will take time for him and his wife needs to help.[15] Plaintiff said he will first sit to alleviate the pain and numbness and if that does not resolve it, he will recline or lie down.[16]

Plaintiff said he can sit for about 20 minutes and then needs to get up and stretch for 15-45 minutes, and that sometimes he will need

---

[12] AR 52.

[13] Id.

[14] AR 53.

[15] AR 54.

[16] AR 54-55.

to lie down and use ice or heat on his back for about 20 minutes.[17] He said that because of the arthritis in his hips and back he has difficulty walking.[18] He spends 50% to 75% of the day trying to alleviate his pain.[19] Plaintiff said he takes medications but they make him drowsy and he is afraid to drive because he frequently dozes off in the middle of something.[20]

Plaintiff testified that 2–3 times a month he gets cluster headaches and they last for 2-3 days, during which he must lie down without light or sound or noise.[21] He also gets lightheaded frequently from the medication.[22] He uses the TV for background noise but rarely watches.[23] He uses his cane daily for stability but at times he has

---

[17] AR 55-57.

[18] AR 57-58.

[19] AR 58.

[20] AR 59.

[21] AR 60-61.

[22] AR 61-62.

[23] AR 62-63.

trouble using his hands.[24] Plaintiff said that on bad days his wife needs to help him dress and bathe himself.[25] His condition is worsening and he has more bad days and she needs to help him daily with some things now.[26] He now has bad days about half of the month.[27] He has a hard time concentrating and loses his train of thought.[28] He said he gets irritated with his family when they don't understand what he is saying and that he gets irritated because of his pain.[29] When he is frustrated, he will walk away, raise his voice, or snap at people.[30]

Plaintiff testified that his insurance would not pay for an EMG but his doctor had put in another request.[31] He said that there were

---

[24] AR 63.

[25] AR 64.

[26] AR 65.

[27] AR 66.

[28] AR 66-67.

[29] AR 67-68.

[30] AR 69.

[31] AR 69-70.

DISPOSITIVE ORDER - 6

lapses in his insurance and he paid out of pocket for some things but some were too expensive.[32] He said he did not get care at the VA because they would not refer him to specialists and that the doctors who saw him changed with each visit so they were not familiar with his conditions.[33] Plaintiff said he will drop things that weigh more than 5 pounds.[34]

Plaintiff testified that his lapse in insurance was in February 2022 and lasted about 2-3 months.[35] He also had a lapse in insurance when he was on AppleCare.[36] He had to wait for 1-2 months to get in to see doctors because of his insurance lapse.[37] Plaintiff said he feels like

---

[32] AR 70.

[33] AR 70-71.

[34] AR 71.

[35] AR 72-73.

[36] AR 73-74.

[37] AR 75.

he has had insurance for what he needs but has an issue getting things approved and has to jump through hoops to get things approved.[38]

After the hearing, the ALJ denied benefits.[39] The ALJ found Plaintiff's alleged symptoms were "not entirely consistent with the medical evidence and other evidence in the record."[40] The ALJ considered the lay statements from Plaintiff's wife and mother-in-law.[41] As to the medical opinions and prior administrative medical findings, the ALJ found:

- the administrative medical findings of Amit J., MD, and Nevine M., MD, to be generally persuasive.

- the administrative medical findings of Renee E., PhD, and Patricia K., PhD, to be persuasive.

---

[38] AR 75-76.

[39] AR 14-34. Per 20 C.F.R. § 404.1520(a)-(g), a five-step evaluation determines whether a claimant is disabled.

[40] AR 24-26.

[41] AR 28.

- the examining medical opinions of Bobbi Woodward, ARNP and Lynette Schultz, PsyD, to be partially persuasive.[42]

As to the sequential disability analysis, the ALJ found:

- Plaintiff met the insured status requirements through September 30, 2027.
- Step one: Plaintiff engaged in substantial gainful activity since February 1, 2022, the alleged onset date.
- Step two: Plaintiff had the following medically determinable severe impairments: diabetes; cervical degenerative disc disease; osteoarthritis, bilateral hips; obesity; depressive disorder; and PTSD. The ALJ also found the following impairments to be medically determinable non-severe impairments: degenerative joint disease of the right shoulder; hypertension; and headaches. He also found Plaintiff's alleged cubital tunnel syndrome and knee pain to be medically non-determinable.

---

[42] AR 26-28.

DISPOSITIVE ORDER - 9

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform a full range of work at the light exertional level, with the following exceptions:

    he can lift and carry up to 25 pounds occasionally, and up to 20 pounds frequently; he needs a sit-stand option, at will; he can occasionally push and pull with all upper extremities; he can occasionally engage in all postural activities; he can occasionally reach overhead and occasionally feel; he can frequently handle and finger; he can have only occasional exposure to extreme temperatures, vibration, and hazards, such as unprotected heights and moving mechanical parts; he is limited to simple, routine tasks; and he needs a routine, predictable work environment with no more than occasional changes.

- Step four: Plaintiff is unable to perform past relevant work as a social services aide.

- Step five: Plaintiff can perform work as a small products assembler II, a marker, and a garment sorter.[43]

---

[43] AR 20–30.

On November 1, 2024, the Appeals Council denied Plaintiff's appeal.[44] Plaintiff timely requested review by this Court.[45]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error" and such error impacted the nondisability determination.[46] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such

---

[44] AR 1-6.

[45] ECF No. 1.

[46] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error— one that "is inconsequential to the ultimate nondisability determination").

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[47]

### III.  Analysis

Plaintiff argues the ALJ erred when assessing the medical opinions, erred in his step-three evaluation, erred by rejecting Plaintiff's symptom reports, and erred in his step-five evaluation.[48] In response, the Commissioner argues that any error in the ALJ's evaluation of the medical opinions is harmless, that there is not error in the ALJ's evaluation at both step three and step five and that the

---

[47] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[48] ECF No. 6.

ALJ's rejection of Plaintiff's symptom reports is supported by substantial evidence.[49] As is explained below, the ALJ failed to consider one of the required factors—consistency—when assessing the medical opinions of one of the examining sources and then the ALJ's evaluation of the opinion is not supported by substantial evidence.

**A.    Medical Opinions: Plaintiff establishes consequential error.**

Plaintiff argues the ALJ erred when evaluating a portion of the medical opinions of ARNP Woodward and Dr. Schultz by offering flawed reasoning regarding the supportability and consistency factors as to Dr. Schultz, and by offering flawed reasoning as to the supportability factor for ARNP Woodward and ignoring the consistency factor altogether.  The Commissioner argues the ALJ adequately considered the supportability and consistency of Dr. Schultz's medical opinions, as well as the supportability factor as to ARNP Woodward's medical opinions.  The Commissioner concedes that the ALJ failed to address the consistency factor as to ARNP Woodward's opinions but

---

[49] ECF No. 10.

argues that this is harmless, as he was not required to address both factors.[50] The Court finds the ALJ failed to address the required consistency  factor as to ARNP Woodward, as well as erred when assessing the supportability and consistency factors as Dr. Schultz's opinions; these errors are consequential.

1.   Standard

The ALJ must consider and articulate how persuasive he found each medical opinion and prior administrative medical finding.[51] The factors for evaluating the persuasiveness include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[52] Supportability and consistency are the most important factors, as the regulations require the ALJ to *consider and explain* the supportability and consistency of each medical opinion and prior administrative medical finding:

---

[50] ECF No. 10, pg. 9.

[51] 20 C.F.R. § 404.1520c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

[52] 20 C.F.R. § 404.1520c(1)–(5).

The factors of supportability . . . and consistency . . . are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.[53]

The regulations define these two required factors as follows:

(1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.[54]

The ALJ may, but is not required to, explain how the other listed factors were considered.[55] When considering the ALJ's findings, the

---

[53] *Id.* § 404.1520c(b)(2).

[54] *Id.* § 404.1520c(c)(1)–(2).

[55] *Id.* § 404.1520c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-

DISPOSITIVE ORDER - 15

1  Court is constrained to the reasons and supporting explanation offered

2  by the ALJ.[56]

3      2.  <u>ARNP Woodward</u>

4      On October 28, 2023, Bobbi Woodward, ARNP, examined Plaintiff

5  at the request of the Commissioner.[57] She noted that Plaintiff was

6  taking the following medications: metformin, gabapentin,

7  hydrocholorthiazide, Losartan, venlafaxine, cyclobenzaprine, and

8  atorvastatin.[58] ARNP Woodward reviewed medical records provided to

9  her and noted the following medical history and illnesses: back and hip

10  strain with a January 2022 X-Ray indicating bilateral hip

11  osteoarthritis and prior L5/S1 posterior fusion without hardware

12  _____

13  supported . . . and consistent with the record . . . but are not exactly the

14  same," the ALJ is required to explain how "the other most persuasive

15  factors in paragraphs (c)(3) through (c)(5)" were considered. *Id.* §

16  404.1520c(b)(3).

17  [56] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

18  [57] AR 577-588.

19  [58] AR 578.

complication, treated with cortisone injections; cervical strain with a benign MRI and an EMG ordered but not performed, and bilateral carpal tunnel symptoms with surgery recommended and cubital tunnel with EMG results pending; diabetes T2 with poor control despite medications and an A1c of 9.8%; bilateral hand neuropathy with paresthesia in the first three fingers and occasionally others; and bilateral knee strain and shoulder stain with recent X-Rays performed but not available.[59] She noted the following surgical history: hip surgery in 2021, L5/S1 fusion surgery in 2016, and appendectomy in January 2003.[60] Plaintiff reported that he was independent in personal care, could perform basic household chores and shop, but could not drive.[61]

On examination, Plaintiff had 20/30 vision in the right eye and 20/40 vision in the left and his eyes, ears/nose/throat, skin, head/neck, respiratory, cardiovascular, abdomen, and neuromuscular strength

---

[59] AR 578-579.

[60] AR 579.

[61] *Id.*

were within normal limits.[62] Plaintiff had surgical scars on his back; foot pulses were diminished bilaterally; sensation was diminished bilaterally the left ulnar and radial, right radial, and left sciatic; and reflexes in the ankles and biceps were diminished bilaterally.[63] Straight leg raising was negative and there was reduced range of motion in the cervical spine, lumbar spine, shoulders, hips, and knees.[64] ARNP Woodward diagnosed lumbosacral stain, bilateral knee strain, bilateral hip stain, and insomnia with fair prognosis for all.[65] She also diagnosed type 2 diabetes with diabetic neuropathy, and cervicalgia with poor prognosis.[66]

ARNP Woodward opined that Plaintiff can sit, stand, and walk for 1 hour at a time each and for a total of 3 hours each in an 8-hour day, and can frequently lift up to 20 pounds and occasionally lift up to

---

[62] AR 579-580.

[63] AR 580-581.

[64] AR 581-583.

[65] AR 583-584.

[66] AR 584.

30 pounds.[67] ARNP Woodward opined that Plaintiff can occasionally push and pull with her right arm, left arm, right leg, and left leg.[68] ARNP Woodward opined that Plaintiff can occasionally perform the following activities: climbing, balancing, stooping, kneeling, crouching, crawling, handling, fingering, feeling, talking, hearing, and reaching overhead.[69] She opined that Plaintiff can have occasional exposure to the following: heights, moving machinery, extreme temperatures, chemicals, dust, noise, and vibration.[70]

The ALJ articulated the following reasoning as to his consideration of ARNP Woodward's opinions:

> I have considered the opinions of Bobbi S. Woodward, ARNP, the consultative physical examiner (Ex. 10F). Woodward opined that the claimant could stand for a total of three hours in an eight hour workday, walk for a total of three hours in an eight hour workday, sit for three hours in an eight hour workday, lift and/or carry 20 pounds frequently, and lift and/or carry 30 pounds occasionally. Woodward opined that the claimant could occasionally push

[67] *Id.*

[68] AR 584-585.

[69] AR 585-586.

[70] AR 586.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

or pull with his upper and lower extremities, that he could occasionally perform all postural activities, and that he could occasionally reach overhead. Woodward further opined that the claimant could have occasionally exposure to environmental hazards. Woodward supported their opinions with a review of the claimant's medical history, an interview, and a physical exam. However, Woodward's opinion regarding the claimant's ability to sit is not supported by any exam finding (Ex. 1F/6; 3F/16, 26, 92, 96; 4F/8, 18; 12F/7), nor is it consistent with the nature of the claimant's impairments or with the longitudinal record (though I have included a sit-stand option, given the claimant's subjective reports of needing to change positions regularly). I further note that Woodward's recommended limitations regarding the claimant's ability to talk, hear, and be exposed to respiratory irritants and noise have no basis in the claimant's longitudinal evidence of record (including the claimant's consultative physical exam) whatsoever (Ex. 1F; 2F; 3F; 4F; 10F; 12F). The limitations on handling and fingering are likewise overstated given the findings of normal grip strength and dexterity (Ex. 10F/4). The remainder of the opinion is persuasive, and well-supported by a thorough exam that demonstrated grossly unremarkable findings, and that is also consistent with the longitudinal record. Accordingly, I therefore find the opinions of Bobbi Woodward, ARNP, to be partially persuasive.[71]

15

### 3.    Consistency

16

17

Plaintiff argues the ALJ erred when he failed to address the consistency factor. The Court agrees.  The Commissioner admits in his

18

19

_____

[71] AR 27.

1    brief that the ALJ failed to address the consistency factor but argues

2    that the ALJ is not required to address both the supportability and

3    consistency factors.  He cites a Ninth Circuit case which he argues held

4    that an ALJ's reasoning to discount a medical opinion was justified

5    because of his consideration of only one of the two factors cited at 20

6    C.F.R. § 404.1520c(1)–(5).[72]

7        The cited Ninth Circuit *Woods* decision states at the relevant page:

8        For example, the ALJ addressed the opinion of Certified
         Nurse Practitioner Lindsay McGinnis that Woods should not
9        stand or walk for more than four hours in a workday and
         needs to sit for 30 minutes every two hours. McGinnis
10       expressed these limitations on a fill-in-the-blank
         questionnaire from Woods's attorney. The ALJ found
11       McGinnis's opinion "not persuasive because it is not
         supported by any explanation" or "pertinent exam
12       findings."[73]

13       This is clearly a discussion of the supportability factor.  The Ninth

14   Circuit went on to state:

15       The ALJ also found McGinnis's opinion "inconsistent with
         the objective treating record, exam findings and imaging," as
16       well as Woods's "work activities combined with her parenting

17   _____

18   [72] ECF No. 10.

19   [73] *Woods v. Kijakazi*, 32 F.4th 785, 794 (9th Cir. 2022)

DISPOSITIVE ORDER - 21

and other activities." In particular, the ALJ cited the "fairly benign" results of an MRI examining Woods's cervical spine and the "very conservative[ ]" treatment of her symptoms— "mostly with medication alone until she received a left knee injection in December of 2018." Substantial record evidence supports these findings.[74]

The Ninth Circuit's analysis reveals that the underlying ALJ decision addressed both the consistency factor and the supportability factor. The Ninth Circuit's analysis in no manner indicated that the ALJ may give greater significance to either the supportability factor or the consistency factor. Moreover, there is no other language in the *Woods* decision that shows that the Ninth Circuit permits an ALJ to address only one of the two required factors provided in 20 C.F.R. § 404.1520c(1)–(5) when considering medical opinion evidence.

Contrary to the Commissioner's argument otherwise, the ALJ is required to explain how a medical opinion or administrative medical finding is or is not *both* 1) supported by "more relevant . . . objective medical evidence and supporting explanation presented by [the] medical source," i.e., the supportability factor; *and* 2) "consistent with

_____

[74] *Id.*

the evidence from other medical sources and nonmedical sources in the claim," i.e., the consistency factor.[75] Here, the ALJ only explained the supportability factor and not the supportability factor. The ALJ therefore erred by not explaining whether ARNP Woodward's opinions were consistent with the medical record as a whole

Initially, the Court notes that the ALJ's articulated reasoning regarding the supportability factor is both cursory and conclusory.  The ALJ fails to address the fact that ARNP Woodward noted that medical records provided to her indicated that Plaintiff had carpal tunnel symptoms in both hands and had a surgical consult at which carpal tunnel release was recommended, and that Plaintiff suffered from neuropathy in both hands with paresthesia in the first 3 fingers.[76]  The ALJ failed to address ARNP Woodward's finding on examination that Plaintiff exhibited reduced sensory distribution along the left ulnar and radial nerves and the right radial nerve.[77]  This is of significance

---

[75] 20 C.F.R. §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2).

[76] AR 27, as compared to AR 579.

[77] AR 27, as compared to AR 580.

because the radial nerve supplies innervation to the first three fingers.[78]  Additionally, the ulnar nerve serves as the major peripheral nerve of the upper extremity and provides sensation to the fourth and fifth fingers.[79]

ARNP Woodward's findings regarding sensory deficit in the ulnar and radial nerve distributions is supportive of her opinions regarding handling and fingering and consistent with the medical record she reviewed, which indicated paresthesia in the first three fingers and occasional paresthesia in the remaining two fingers.

The ALJ's error when considering ARNP Woodward's opinions is consequential

On remand, the ALJ is to reassess Plaintiff's ability to use his upper extremities, considering his diagnoses of cervicalgia, diabetic neuropathy, carpal tunnel syndrome, and rule-out cubital tunnel

---

[78] *Radial Nerve: What It Is, Function, Anatomy & Conditions,* Cleveland Clinic, clevelandclinic.org. (last viewed July 17, 2025).

[79] *Ulnar Nerve Entrapment: Causes, Symptoms & Treatment*, Cleveland Clinic, clevelandclinic.org. (last viewed July 17, 2025).

syndrome and is to reevaluate whether such are consistent with or inconsistent with the opined limitations provided by ARNP Woodward.

    4.    <u>Other Medical Opinions</u>

Because the Court has remanded the case for further proceedings, the ALJ is to re-evaluate the medical opinion evidence as a whole and articulate his finding as to both the supportability and consistency of the opinions.

**B.    Symptom Reports: this issue is moot.**

Plaintiff argues that the ALJ failed to provide valid reasons for discounting his subjective complaints. Because the Court is remanding the case with direction that the ALJ re-evaluate the medical opinions and administrative medical findings, the ALJ must re-evaluate Plaintiff's symptom reports. When doing so, the ALJ is to fairly consider not simply Plaintiff's access to health insurance but also the numerous delays indicated in the record in Plaintiff's ability to obtain approval from his insurance provider for recommended treatment and testing.

**C.     Step Three and Step Five Errors: this issue is moot.**

Because the Court is remanding the case with direction that the ALJ re-evaluate the medical opinions and administrative medical findings, the ALJ must make a new step three and step five determination.

**D.     Remand: further proceedings**

Plaintiff prefers a remand for payment of benefits, rather than a remand for more proceedings. However, when the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[80] At this time, remand for further proceedings is appropriate.

On remand, the ALJ is to fairly and fully consider the longitudinal record, reevaluate the medical opinions and Plaintiff's symptom reports, and then complete the five-step disability evaluation, assessing whether Plaintiff was disabled for at least a 12-month period during the at-issue closed period.

---

[80] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).

1

### IV.    Conclusion

2    Plaintiff establishes the ALJ erred. The ALJ is to reevaluate—

3    with meaningful articulation and evidentiary support—the sequential

4    process. If necessary, the ALJ is to consider calling a medical expert to

5    testify as to the combined effects of Plaintiff's physical impairments

6    and their effect on his ability to perform work at the light or sedentary

7    exertional level.

8    Accordingly, **IT IS HEREBY ORDERED**:

9    1.    The ALJ's nondisability decision is **REVERSED, and this**

10    **matter is REMANDED to the Commissioner of Social**

11    **Security for further proceedings pursuant to**

12    **sentence four of 42 U.S.C. § 405(g)**.

13    2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF**

14    **Nos. 6 and 10**, enter **JUDGMENT** in favor of **Plaintiff**,

15    and **CLOSE** the case.

16  ///

17  //

18  /

19

1    IT IS SO ORDERED. The Clerk's Office is directed to file this

2    order and provide copies to all counsel.

3    DATED this 7th day of August 2025.

4

5    _____
     EDWARD F. SHEA
     Senior United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19